King, J.
(orally).
This is a petition in error to reverse the judgment of the Court of Common Pleas of Ottawa County, Ohio. The plaintiff below was William Kelly, and he recovered a judgment against the railroad company for something like $1,400. His action was brought to recover for injury to his growing peach trees, incurred by their being destroyed and injured by fire, which he alleged was caused by the negligence of the defendant company in running their locomotives without being properly constructed and without providing them with proper spark arresters, etc., and not keeping them in a proper state of repair. The record is very long, but the errors that are claimed may be stated to be two — that the verdict is not sustained by sufficient evidence, and the court erred in charging the jury.
First: It is claimed that the verdict is not sustained by any evidence that the fire was caused by the defendant’s locomotive. I can only refer to the testimony of several of the witnesses who testified to seeing the fire in question, that it started in the grass along the right of way of the de *323 fendant, and that it was seen after the. passing of the locomotive over the road; that it ran across the premises of the company, and ran across other lands, and then communicated to the lands of Mr. Kelly. The witnesses were permitted to testify that along about the time and immediately after the passing of the defendant’s locomotive, other fires occurred in that neighborhood. It is claimed the latter testimony is incompetent; also that all the testimony taken together does not prove that this fire came from this locomotive.
The manner of proving the setting of fires by locomotives is subject to considerable latitude. It has been held that where the fire in question could be traced to a particular locomotive, that the plaintiff would be confined in his proof to the using of- that locomotive, and that he could not show that fires had been communicated by other locomotives; and as to that one,that it had set other fires about the same time in the same neighborhood, either before or after, along the same road or territory. But where the particular locomotive is not traceable, he may show generally that the company was reckless in this particular, and from this the jury might find the defendant liable. In a case cited to us, reported in the Lawyer’s Annotated Reports, Vol. 16, page 299 (s. c., 144 Pa. St. 461) Henderson, Hull & Co. v. Philadelphia & Reading R. R. Co., the court says “Evidence that fires were repeatedly set out by sparks of unusual size from defendant’s engines on that part of the line where the property was situated is admissible in an action to recover the value of property alleged to have been destroyed by fire set out by the engines which cannot be identified, as tending to show general carelessness on the part of the company, when it has been shown that from the location of the destroyed property and the circumstances of the case, the fire probably originated as alleged; but such proof must be confined to the conditions existing at or about the time of the loss. ’ ’ And the court referring to the case of Albert v. Northern Central R. Co. 98 *324 Pa. St. 316, quote as follows : “Where it appeared that the plaintiff’s loss,if indeed it was caused at all by the defendant’s' negligence, was attributable to the escape of sparks at a particular time from one of two particular engines, both of which were identical, evidence was held inadmissible on the part of the plaintiff in order to prove defendant’s negligence, to the effect that sparks of unusual size had been emitted for some time prior to the time of the fire by defendant’s engines generally.” In the case before us it was conceded that the defendant only had two locomotives, and at this time they were ouly running one of them. We think that it would have been competent to show that every one of the defendant’s locomotives emitted fire; but at the trial, acts of only one of the locomotives were proved, and that was the one in use. We think the verdict of the jury should not be disturbed on the ground that there was not sufficient evidence to support it. The fire started close to the fence, adjoining the company’s right of way, and there is no other source from which that fire could have originated.
In the course of the trial the railroad company sought to' offer evidence to show that the particular kind of spark arrester on their locomotive was in general use on the railroads in the United States. That proposition was argued to us at great length, it being conceded that the judgment of this court in the case of Railroad Company v. McKelvey, decided by the Circuit Court of Erie County, did not cover’ that proposition. We are not prepared to say that that kind of evidence would not be competent, but we. think that this question does not appear in the record, so that we .are not called upon to pass on that question.
The court submitted the case to the jury upon the ques-tion “whether the railroad company had exercised due and proper care in providing, and keeping in repair, such spark ■ arresters as the statute provides for. The statute,being sec. 8516-39, as amended April 18, 1894, requires every *325 railroad, company to use on every locomotive some device or contrivance that will most effectually guard against sparks.
It is argued that if the company show that it used spark arresters such as are in general use on locomotives in the United States, that it is a compliance with the statute. We don’t think that there was any such evidence offered in the case. On page 239 of the record the witness, R. L. Hogg, was inquired of as to the size of the meshes used in spark arresters on the Baltimore & Ohio Railroad twelve years be'fore' — that was excluded. He was also inquired of as to the size of the meshes used by the Lake Shore & Michigan Southern and the ‘ ‘ Big Four’ ’ and the Baltimore and Ohio at this time, to arrest sparks — that was excluded. Then in the deposition of the master engineer of the Brooks Locomotive Works. “State if you know what"sized netting is generally used in locomotives?” This was objected to, and objections sustained. He said in answer, that the standard practice of the Brooks Locomotive Works is 2|- by 2-J mesh to the inch No. 12 Birmingham wire gauge. There are other sizes used throughout the country varying from 4 by 4 to the inch to 2 by 2, and wire gauge varying from No. 12 tolS and 14 Birmingham wire gauge — some roads use one kind of mesh and some another. It is a long answer, but it does not answer the inquiry as to the kind of meshes in general use in the United States.
In the case of the Railroad Co. v. McKelvey (cited above) the court held that the defendant did not have the right to show that other roads used a particular sized mesh. Again the witness was asked to state what road besides the Lake Side & Marblehead used this kind of netting in their spark arresters, and the witness goes on and names a large number of roads; then he names a number of roads that use another kind. We think the court did not err in excluding this testimony. Again he was asked if he knew what standard netting is? He answered, “No, sir; I don’t know that *326 there is any standard.” He was also asked to state what sized net is generally used in the United States? “Positively, I cannot state; but as a matter of common knowledge, I believe that 2\ by 2|- netting is more generally used than any other individual size. There is another deposition, but none of the questions met the question which the defendants claim in this case. I don’t think that the defendant would have the right to prove by its witnesses that “A” road and “B” road and “C” road used the same kind of netting, to show that that kind of netting was in general use in the United States.
It is claimed that the rulings did not give all that was in dispute on the question, and counsel’s argument is that this was a kind of standard netting. The trouble with tire testimony referred to is, that from the testimony of some employees of the company that were at or near the fire, the jury might have found, and they were warranted from the evidence — that of Gouley,in finding that some meshes were about half an inch apart, and from which quite good sized sparks could escape. The engineer testified upon that point, and swore several times that he did not know when these holes in the net were made after the fire. It is claimed that this fire was on the 23rd of August, and on the 2nd day of September the holes were found. Hogg said that after the 23rd of August, and before the 2nd of September, he struck it with a sharp instrument, making holes in the net. The jury might well have found that the holes were there at the time of the fire. The engineer can say nothing about it, except that he is quite sure that they were made after the time of the fire.
Second — As to the charge of the court:
The court was requested to give two requests: First: “The defendant is by law allowed to use fire in the operation of its locomotives, and if it had provided its locomotives with a spark arrester which would prevent the escape of fire and sparks as completely as the best spark arrester or *327 device then known and in general use, and which had been proved by experience to be such; and it was at the time of the injury complained of in good repair, and the locomotive was then properly managed; then it had discharged its whole duty in that regard, and would not be liable for damages to the planitiff caused by fire set by sparks from the locomotive. ”
Second request was: “That the defendant was bound to provide its locomotive with the best spark arrester then known and in general use, and which had been proved by experience to be such, and if it did so, and the same was in good order and repair, and the locomotive was properly •operated at the time, it would not be liable for damages by fire set by sparks emitted from its locomotive while running its road. ’ ’
As to the first of these requests, it requires the jury to pass upon questions not in issue, and which the defendant did not dispute.
The second required the court to say that if the defendant’s locomotive was provided with the best spark arrester then known and in general use, and it was kept in good repair, it would not be liable. It seems to us that that was a stronger statement of the company’s duty than could have been claimed. It would not have been error if that charge had been given. But whether it was error to refuse it depends upon whether the court had given or did give the substance of the law in the charge that it did give.
The court charged the jury on this point: “Railroad companies are in no sense insurers, but in this state are required by statute in the use of their engines, to prevent loss or damage by fire, to place on their locomotive or engines, and keep in good order, some device or contrivance that will most effectually guard against the emission of fire and sparks which would otherwise be thrown out by such engine or locomotive or ears, having regard to the enterprise *328 in which they are engaged, and the objects to accomplish. And the law places no higher or further duty upon them than in this particular; and when they have performed that duty required of them by the statute, they are not responsible for accidental fires caused by the escape of sparks thrown from their engines. ’ ’
Judge Blandin and S. P. Alexander, for Railroad Com-, pany.
T. J. Marshal and Pratt & Wilson, for Kelly.
They were required to place upon their locomotives some device or contrivance which will • most effectually guard against the emission of fire and sparks which would otherwise be thrown out — that being the rule which the statute laid down, it was a proper rule for the court to give to the pry.
Now. the court having given that, we don’t think the court could have been required to have given the charge embodied in that request,for the charge which it had given covered the law on the subject. The charge which it gave covered the rule given by the statute; and it does not make the obligation of defendant so strong as in the request.
We cannot saj, in running over this record, that the court erred in refusing to give these requests.